May it please the Court, Jeffrey R. Sukup for Appellant Lance Cole. I'd like to request five minutes for a vote, please. Your Honors, today I wish to focus on the flashpoint of controversy in this case, whether retired minor Mr. Caudill proved by preponderance of the evidence that he is totally disabled. An ALJ decides total disability by considering distinct categories of evidence, pulmonary function studies, arterial blood gas studies, and reasoned medical opinions. The disability is not simply decided by reviewing these categories of evidence in a vacuum. Rather, the regulations and precedent explain that if any of these categories suggest disability, the ALJ must weigh it against any contrary probative evidence to determine if disability is proven from the record overall. This is clarified and this is expressly explained by the Regulation 20 CFR 718.204, the disability regulation. The ALJ here failed to follow that procedure for reviewing the evidence. He found Mr. Caudill totally disabled only by considering the evidence in a vacuum. While the ALJ found the medical opinions of Drs. DeFore and Clayton persuasive, he did not weigh them against contrary probative evidence. That is very critical in this case because all the other record evidence suggests... Why are you able to say with conviction that he did not consider contrary evidence? It was before him. Because if you look at his decision and the JA's question, your review is 282. The ALJ considered these separate categories of disability evidence, again, pulmonary function, arterial blood gas, and reasoned medical opinions. But the problem lays in the fact that he did not weigh the validity of those medical opinions and their stated reasoning against the contrary evidence that weighed against them. Well, I thought he did. He mentioned that he didn't buy your two docs and he bought their two docs. No, that's... What else does he have to do? That's just the medical opinions, Your Honor. The other evidence in this case consists of pulmonary function studies and arterial blood gas studies. If you look at the timeline of the medical evidence development in this case, it shows that the, for example, specifically with the pulmonary function studies, it shows that Mr. Caudill's lung function is gradually improving over time, which is directly contrary to what Dr. DeFore and Dr. Clayton said in their opinion. Do you have a presumption that you have to work against? Not with respect to total disability. There is no presumption that Mr. Caudill is disabled. He has to prove that from the evidence presented in this case. And you may be thinking of the 15-year presumption. That only comes into play if he establishes that he is totally disabled. There is no presumption. Improvement in the pulmonary function during the time that he is no longer working in the mind. In other words, did this improvement begin to transpire after he was... He's not working in the mind at the present time. Correct. And this noticed improvement occurred in whole or in part after he ceased working in coal mining. Is that right? That's true, but the problem with... Not necessarily the problem, but that's not necessarily indicative of anything about his... About the source of the... Let me back up one minute. Pneumoconiosis, as I'm sure all the parties will agree, is a disease in, I believe, all cases. It does not improve over time. So the fact that the pulmonary function studies and arterial blood gas studies showed an improvement in lung function over time is directly contrary to the notion that any disability he has may be due to pneumoconiosis. But that's my primary argument. Why is that? Well, because if we assume for the sake of argument at this juncture that he has totally disabled from a respiratory standpoint, then if that impairment would be due to pneumoconiosis, generally speaking, the disability would not be improving over time. Pneumoconiosis is a progressively worsening disease. So from year by year, even after he's left the mines, if the impairment is due to pneumoconiosis, it should be worsening over time, not improving. And that's not what the evidence reveals. So your argument is that if he's... If there's improvement, he doesn't have pneumoconiosis? Well, that's one of the factors that the medical... Is that your position or is that not your position? I guess that would be my position on the medical evidence, but my primary point is not necessarily about whether the disability is due to it. The point I like to make primarily is the fact that disability was not established by this case, mainly because the LJ did not weigh the evidence against each other in deciding that that case is... that point is made. That is the claimant's burden of proof. It is not mine. There is no presumption of proof. What evidence did he not weigh other than your argument that he didn't give sufficient weight to this slight improvement over time? Is there anything else? Yes. Again, pages 280 to 282, and if I could, I'd like to start with the regulation because the LJ quotes it as well. 718.204, and it states that unless outweighed by contrary probative evidence, any one of the categories that I listed can establish total disability. The problem here is the LJ did list the categories. He talked about the PFTs, pulmonary function studies, I apologize for the acronym, arterial blood gas, and medical opinions, but then he stopped his analysis there. He credited the medical opinions of DeFore and Clayton and said, this is sufficient in and of itself to establish total disability. What the LJ should have done, per the director's own regulations, is weigh the reasons Drs. DeFore and Clayton gave against the evidence that directly cuts against those reasons. And here, the evidence is very striking. Let's start with Dr. DeFore, for example. Dr. DeFore's reasons, and the LJ's crediting that, reasons for crediting that opinion were, one, Mr. Caudill has a low FEV value, which is a measure of lung obstruction, and two, he has an abnormal response to exercise as indicated by his oxygen. The other evidence that I mentioned, however, cuts directly against that finding. Later evidence shows that, in fact, his FEV1 increased over time and improved dramatically, and that he had a normal response to oxygen, as shown by Dr. Fino's exercise test. Dr. Clayton didn't take that into account, and more importantly, the LJ didn't weigh that contrary evidence against Dr. DeFore's stated reasonings for finding disability. The same problem exists with Dr. Clayton's opinion. Well, your dissertation here has not taken into account the date upon which these various doctors performed their examination and where the plane, if that's what we call him, was in his progression or improvement, if that's what occurred. Each of these doctors examined him at a point in place and time, and you've got two doctors furnished by the employer who found him not disabled and two others who found that he was disabled. With that kind of record, it's going to be very difficult for you to overturn the ALJ, don't you think? No, Your Honor. The regulations and the law provide that any party, not just the employer, any party, the claimants, the director, can not only solicit supplemental opinions from these doctors to review later evidence, they can oppose these doctors to present them with later evidence and ask them to explain how their opinions are still reasoned in the face of that. Well, at least on the issue of whether there's substantial evidence to support the ALJ, you would concede that your client wouldn't prevail on that point. Since there are two physicians here who have expertise in this area who say that he was, in fact, disabled. Well, yes and no. The thing is, the issue about total disability, I would not characterize as a substantial evidence issue. The issue is a question of law because the ALJ fails to weigh the evidence against each other as the law and the regulations. If the doctor's opinions are not to be weighed in the determination of whether there was substantial evidence to support the ALJ's opinion, I don't get that. Your Honor, it's not a substantial evidence question. Substantial evidence would be a question of substantial evidence. But that's one of the issues in the appeal here, whether there was substantial evidence to support the ALJ's opinion of disability. Except that I would characterize it differently. Wait a minute. Is that an issue on appeal or not? Where am I wrong in thinking that that's an issue on appeal? The issue of substantial evidence goes to whether the ALJ properly discredited my doctors, Drs. Fino and Castle, on the issue of disability causation. That is a separate issue and it's not one I'm focusing on now. The issue of total disability is a question of law. It's a question of whether the ALJ properly reviewed the evidence and the procedure that the regulations and the law required him. I submit that he did not. He looked at the separate categories of evidence in a vacuum. He is only allowed to credit a medical opinion in and of itself to find total disability once he explains why that opinion is not discredited or unpersuasive in light of contrary evidence. If you look at his opinion, he did not do that. He cited the regulation which says I have to do that. The contrary evidence that you're focusing upon are the studies. The arterial, say the words for me. Arterial blood gas and pulmonary function. Are those the features that you view as being unconsidered or no evidence of consideration? Yes, I would view those as the evidence that the ALJ failed to weigh against the... which is the threshold. There's a threshold step. Then you get to the step Judge Clay is talking about. Your point, I take it, is that the ALJ failed. It mixed the steps without meeting the standard for articulating reasons for the first step before going to the second. Yes, I see my time's up. Can I answer your question? I think you may. Yes, Judge Clay, I believe, is addressing the second step. It's the question of whether pneumoconiosis is disproved because then there is a presumption once total disability is established and whether disability is proven by me to be not due to pneumoconiosis. The step I'm focusing on is the first step. Whether the claimant has established by the burden of proof, which he has, to show that he is totally disabled. That is what invokes the presumption that I think you're referring to, Judge Clay. All right, thank you. You'll have your rebuttal time. Thank you. May it please the Court, and I want to bifurcate our argument ten minutes for myself and the claimant and then five minutes to the solicitor for the Department of Labor. May it please the Court, we would ask that this Court affirm the decision. I think this is one of those cases that this coal miner, who is undisputed, he worked in the nation's coal mines for over 17 years and did what he was supposed to do and filed a claim, went to the Department of Labor's doctor, as indicated just a few minutes ago. The doctors are board-certified pulmonary doctors who are on the list and have been vetted by the Department of Labor to do these exams. Their results are always, in most cases, the Department of Labor has a policy of going back and validating these tests. I want to point out that there are a number of ways that someone can establish total disability. It's not just a breathing test, or commonly called pulmonary function testing or pulmonary function studies, or arterial blood gas, which measures the amount of oxygen, but the doctor's reasoned opinion is also given equal weight in establishing total disability. That was the case in this case. It's sort of like... I always think back to that great poem by Robert Frost in 1909, A Tuft of Flowers, where the theme of that poem is everyone works together, some alone and some together, but you have a doctor that made that opinion. That was accepted by the director, who does not give these cases away. Some say they approve now, as opposed to the 80s and 90s where they were approving 3% and 4%, they're now approving 17% or 20% of the cases, but it's like a gauntlet. You go through the director and then the administrative law judge and the BRB, and again, I guess there may be, and I've been doing this quite a bit, at least I've been doing it for 40 years, I see now just under 2 cases out of 10 that are awarded, so it's not a giveaway program at all. But I think that these different issues that come up are difficult for any minor, but particularly ones that establish total disability by a doctor's reasoned opinion. And in this case, there were two doctors, Dr. DeFore and also Dr. Clayton, that made these decisions. And then the director, again, that approved basically around 2 out of 10 cases for awards upheld by the judge and upheld by the BRB. And so just all of these issues raised have been vetted, but one particular statement was significant, and I just picked up on it, I guess, when Mr. Sukup said that any party can go back to the doctor and get depositions, and that was done in this case of Dr. Castle. Dr. Castle's argument, as I understand it, is he's not arguing for a certain decision. He's saying this decision shouldn't be credited, the ALJ's decision, because in the absence of some explanation by these two particular doctors who favored the determination, and in the absence of their explaining that they have reviewed and figured out where it fits in their assessment, these contradictory tests that came later, that's, I think, the argument that you could help us with, that you could address. He's really not saying they shouldn't be treated as totally disabled. He's saying you can't credit. There is a process, and that's my understanding. So because these doctors, Clayton and DeFore, they gave full probative weight to those opinions without discussing the contrary testing, objective tests. There's a number of answers to that. First of all, the testing process does allow... There's some time, temporal discrepancy. So the Department of Labor test is first, and at that time or a later time, any time before 20 days before a hearing is scheduled, the responsible operator can get their own testing. Now, at any time for a period, I think it covered a year and a half to two years, they could have gone back and presented that evidence, that later developed evidence by their doctors to the first doctors and taken their deposition under the rulings of Richardson v. Prowse. Any party... The fundamental rule in administrative hearings is that medical reports is an exception in administrative hearings to the hearsay evidence rule. If a party does not avail himself or herself to take advantage and cross-examine these doctors and present them with these reports. So I think it's... I'm not looking at the timeline here, but is it your assessment is there was time and opportunity to make the challenge that has been made here? Absolutely, but then you're taking... I mean, in reading the judge's opinion and realizing that one of the big reasons that there appears to be a pretty strong presumption by appellate courts on the lower-level judges and decision-makers is that they're down in the trenches and they know the doctors and the counsel and the community and they know... They make a really good assessment. It sounds to me like the argument doesn't quarrel with that. It quarrels with, at the decision-making level, what analysis went on that is depicted in the report or in the opinion. Well, I think that's the way they framed the question and I think that the answer to that is that you've had not only the judge but the appellate body have looked at the doctor's report and he did cover all of the areas. He didn't cover these tests, I gather. I think he gave... Specifically, he said, I give less credit to these doctors for the responsible operator and stated explicitly why. I know. As between the two sets of doctors he chose. But this is about some testing that wasn't discussed at all. Well, I think in a roundabout way, in a way of his, you know, the way he discussed and analyzed the evidence, I think he did cover his ground. So we feel that this is not later discovered evidence. This is later developed evidence. And so far as this variance in the test results, you know, in doing these cases, you see this all the time and that depends on a lot of factors. One of the most common is the sequence in which they give the test. They can do certain tests first and give them bronchodilators, which also what we see is it commonly raises some of the test values on oxygen and on breathing. They can... And conversely, the claimants... I mean, I ask doctors to give the blood gas test first because they don't have the other influences of the medication. But... And there's no rules to cover that. I guess each side sort of vies to get their own advantage and get the best test results within that framework. But I think it's... I think that the issues as far as crediting the Department of Labor doctor and the claimant's doctor, you know, is fully supported and the issue of not crediting the RO doctors is not supported by the evidence and the judge made the correct decision. I'm going to sit down and let co-counsel take up the rest of the argument. Thank you. Thank you. Good morning. May it please the Court. I'm Mackenzie Fellow and I'm here to represent the Director of the Office of Workers' Compensation Programs at the Department of Labor. I'd like to first note that we have not taken a position on the ultimate award of benefit in this case. We're here only to address a point that Lance Cole is arguing about what an ALJ has to say in its opinion. In their reply brief, they say that where the record contains evidence which contradicts or detracts from a physician's conclusion, evidence which the physician did not see, the ALJ must explain why the contradictory evidence did not detract from the reliability of that physician's conclusion before giving him or her this positive weight. And while we agree, of course, that an ALJ has to explain their decision, we oppose any effort to micromanage the words that must go into an ALJ's opinion given the variety of evidence that is presented to these ALJs. An ALJ's decision has to be rational and supported by substantial evidence. That is always the requirement, and that flexible standard allows the Court to ensure that the ALJs engage in reasoned discussion. Would you call this argument micromanaging the words in that it seems to just look for a rational explanation in accordance with the language that's used in the regs, looks for a rational explanation of this contradicting or contrary evidence? If it's not in there, I guess that goes back to the point Right, rather than micromanaging the words. Well, I guess our position is that it's just not always true. No, but apparently it is here, so is that your point? That that can't be styled for a particular case? Yes, that the weighing of evidence is not susceptible to some sort of bright-line rule like this, that when the evidence says X, the ALJ must say Y, because there's contradictory evidence in almost every case, and it depends on what kind of contradictory evidence it is, whether the ALJ has to provide the explanation that the employer is asking for here. So, for example, if one doctor does an X-ray and reads it as negative, and then six months later, a second doctor does an X-ray and reads it as negative. That's a lot different, I think, maybe. That's where you just have differing opinions. The argument here, as I understand it, is, did you look at this, and how did you come to your conclusion in light of it? Well, we agree that the ALJ has to look at all relevant evidence and explain his decision. We would just ask the court not to make any grand statements about when the evidence shows X, an ALJ must say Y, because we think there are times where there's contradictory evidence, that the doctors haven't seen each other's contradictory evidence, and an ALJ can credit one over the other without explaining why the lack of seeing the other evidence makes, why a doctor's opinion is still reliable, given that he didn't see the other evidence. Sometimes you're going to miss hitting all the marks. I think that's your argument, that the court shouldn't weigh in on that and require that that testing be addressed. It's for this case. You're worried that we'll be writing a rule that applies. I understand your worry, but I guess it more goes to your partner at the table about, what about this case? So if there's no grand rule... We have faith that these attorneys can defend their positions. We are concerned about the administration of the act in general. And doctors are faced with... There's absolutely no requirement that before a doctor can be credited, he has to have seen all the other evidence. Okay. Are there no further questions? Thank you. Any rebuttal? Just to clarify, I agree with the Director. There is no categorical rule that a doctor that doesn't consider all the evidence can never be credited. That's not the position I'm taking at all. What I would submit is that there is a categorical rule that an ALJ has to explain why evidence that contradicts a doctor's stated reasoning for fine and total disability does not outweigh it. Well, the level of explanation is maybe the debate here. If it comes out rationally or doesn't mention these objective tests, I think that's the argument we're hearing. That it's, well, it's kind of a big mush and we take the bulk and we say we come out this side. Well, except that the case law says that the court has to be able to understand what the ALJ said and why he said it. That's from the Lane Howell case in the Fourth Circuit and it's reflected in this precedent as well. It's pretty easy to tell what the ALJ said about the docs. We know that he said he credited two and he didn't credit the other two. But again, he does not explain how Dr. DeFore and Clayton's reasoning for finding Mr. Call disabled bears any credence in the facts. The facts are directly contradicted by the objective evidence that is not discussed by the ALJ in any way, shape, or form. You can look for yourself in the decision. It is not discussed. I mean, that does not bear with the law. But what the ALJ didn't say, you're not saying that what the ALJ did say is contradicted by the record. Correct. The ALJ could, given certain facts, the ALJ could credit medical opinions as reason even if they don't review other evidence. So I don't disagree with the Director on that. The problem is the ALJ did not follow the procedure for explaining why these opinions are credible when all this evidence amounts against it to show that it's not finding total disability. That doesn't follow the law. It doesn't follow the Director's own regulations, which, by the way, does impose that categorical rule of explanation. I would submit on this case that you cannot affirm the decision when the ALJ doesn't follow the procedure for discussing and weighing the evidence. For that reason, I think vacator is an option here. I guess one other thing I just would add in response to Mr. Wolfe's point about he seems to suggest that there's really no way that these medical opinions can be rehabilitated or upheld because they went first and that's just the burden the claim bears. Mr. Wolfe explained to you he's been doing this for 40 years. He knows how to solicit a supplemental opinion from a medical expert. He knows how to depose his medical experts and provide them with information. This happens in our cases all the time. And I think he sat on his rights and chose not to validate these opinions and provide ammunition for the judge to find them. I thought his argument was Lance Cole sat on his position and didn't undermine those opinions. It's not our burden to prove to undermine the positions. The claimant's burden to prove to establish that he is disabled based on these opinions and based on the fact that if they are not contradicted by evidence as a whole, at least where the ALJ explains it. He made no effort to do that. The director made no effort to rehabilitate the opinions either. And just the defining statement here is that the ALJ did not act to explain why these statements from these opinions that are contradicted by apparently all other record evidence are still reasonable and credible given this evidence. That's called for by the case law, the regulations, and it explains pretty well, I think, why this case should be vacated. If there are no other questions, that's about all I have to say today. All right. Thank you. Case is submitted. Call the next case.